In re NEW YORK, W. & B. RY. CO.

(Supreme Court, Appellate Division, Second Department.   May 9, 1912.)

1. EMINENT DOMAIN (§ 170*)—PROCEEDINGS TO TAKE—APPOINTMENT OF COM-MISSIONERS—CONDITIONS PRECEDENT.

As a condition precedent to the appointment of commissioners to appraise property in condemnation proceedings, the plaintiff must show that it had failed to agree upon a price for the purchase of the property, after effort in good faith to reach such agreement.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig: §§ 462–467;  Dec. Dig. § 170.*]

2. EMINENT DOMAIN (§ 170*)—PROCEEDINGS TO TAKE—APPOINTMENT OF COM-MISSIONERS—AUTHORITY TO AGREE ON PRICE.

Where the by-laws of a railroad company gave its president general charge of its business, no formal specific resolution of its board of directors was necessary to authorize him to attempt to agree upon the price for land sought to be condemned for a right of way, as affecting the good faith of the attempt, especially where defendants failed to object to his authority during the negotiations.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 462–467; Dec. Dig. §. 170.*]

3. EMINENT DOMAIN (§ 227*)—PROCEEDINGS TO TAKE—ASSESSMENT BY COM-MISSIONERS—QUALIFICATION OF COMMISSIONERS.

Under Code Civ. Proc. § 3369, which provides for the appointment of three disinterested competent commissioners, a commissioner appointed to assess the value of land condemned for railroad uses is not disqualified by the fact that he is an attorney for a railroad company, and which has business relations with another railroad company that owns the majority of the stock of the petitioner.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 581; Dec. Dig. § 227.*]

4. EMINENT DOMAIN (§ 238*)—PROCEEDINGS TO TAKE—OBJECTION TO QUALI-FICATION OF COMMISSIONER.

In a proceeding to condemn land for railroad uses, where no objection was made to the qualifications of a commissioner during the trial or upon the motion to confirm the report, such report, in the absence of bias or prejudice, should not be disturbed on appeal.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 614, 619, 658, 659, 660, 666, 668, 669, 671, 673, 674–687;  Dec. Dig. § 238.*]

5. EMINENT DOMAIN (§ 238*)—PROCEEDINGS TO TAKE—ASSESSMENT BY COMMIS-SIONERS—DISCRETION.

Commissioners to assess the value of land sought to be condemned may act upon their own judgment, and from information obtained from a view of the property, as well as from the evidence before them, and their award will not be set aside for inadequacy or excessiveness, unless palpably wrong in either respect.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 614, 619, 658, 659, 660, 666, 668, 669, 671, 673, 674–687; Dec. Dig. § 238.*]

6. EVIDENCE (§ 142*)—VALUE—PRICES OF OTHER PROPERTY.

In a proceeding to condemn property for railroad uses, evidence of the prices paid by the railroad for other property is inadmissible as proof of the market value of defendants' property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423;  Dec. Dig. § 142.*]

7. EMINENT DOMAIN (§ 238*)—APPEAL—PRESUMPTIONS—CONSIDERATION OF EV-
IDENCE.

Where evidence of the prices paid by a railroad for other property was erroneously admitted in proof of the market value of defendants' property, it will be presumed that the commissioners considered such evidence in fixing the value of the defendants' property, so that defendants suffered no harm thereby.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 614, 619, 658, 659, 660, 666, 668, 669, 671, 673, 674–687; Dec. Dig. § 238.*]

8. EVIDENCE (§ 219*)—PROCEEDINGS TO TAKE—WEIGHT OF EVIDENCE.

The prices paid by plaintiff in condemnation proceedings for property similar to that of the defendants cannot operate as admissions against plaintiff's interest binding upon the commissioners in fixing the compensation; evidence of such prices not being a proper criterion of the value of defendants' property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 762–770; Dec. Dig. § 219.*]

9. EMINENT DOMAIN (§ 145*)—PROCEEDINGS TO TAKE—ASSESSMENT BY COM-
MISSIONERS—MEASURE OF DAMAGES—"MARKET VALUE."

Commissioners in proceedings to condemn land should award full compensation for the property taken, measured by its present market value, and not including anything for the benefit to the party taking the property, as distinguished from the injury to the owner; "market value" being the price that the property will bring when offered for sale by one desiring, but not obliged to sell, and bought by one under no necessity of buying.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 378–389; Dec. Dig. § 145.*

For other definitions, see Words and Phrases, vol. 5, pp. 4383–4388; vol. 8, p. 7717.]

10. EMINENT DOMAIN (§ 134*)—ASSESSMENT OF DAMAGES—VALUE OF PROPERTY
—SPECIAL EXTRINSIC VALUE.

In determining the market value of property sought to be condemned, the commissioners must consider any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it is taken; but the mere fact that property is within the lines of a proposed railroad does not enhance its value to the railroad.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

11. EMINENT DOMAIN (§ 45*)—PROPERTY SUBJECT TO APPROPRIATION—PROP-
ERTY RESTRICTED TO RESIDENCE PURPOSES.

That property is subject to covenants restricting its use to residential purposes does not preclude the construction of a railroad thereover, pursuant to statutory authority.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 94–100, 102, 106; Dec. Dig. § 45.*]

Appeal from Special Term, Westchester County.

Application by the New York, Westchester & Boston Railway Company to condemn lands of John Oscar Ball and another. From a judgment condemning defendants' property and appointing commissioners of estimate and appraisal, and from an order confirming the commissioners' report, defendants appeal. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, CARR, WOODWARD, and RICH, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. P. Bachman, of New York City, for appellants.

Ralph P. Buell, of New York City (George S. Graham and Allen Wardwell, on the brief), for respondent.

HIRSCHBERG, J. This is an appeal by the defendants from an order· of the Special Term of this court confirming the report and award of commissioners of appraisal appointed in proceedings instituted to condemn certain land owned by the defendant, John O. Ball, for the purpose of the plaintiff's railroad. The defendant, Elizabeth B. Ball, has no interest in the premises except her inchoate right of dower, although she owns adjoining premises on which is located a dwelling house. The defendants also seek to review by this appeal the judgment appointing the commissioners and condemning the property. Preliminary to the appointment of the commissioners, the learned Special Term tried certain issues of fact raised by the pleadings, and determined among other things that the plaintiff had been unable, after efforts made in good faith, to agree with the defendants upon a price for the purchase of the premises sought to be condemned. The defendants contend on this appeal that such finding was erroneous.

[1] It was necessary for the plaintiff, as a condition precedent to the appointment of commissioners, to prove that it had failed to agree upon a price for the purchase of the property sought to be condemned, after an effort made in good faith with the owner of such property, to reach such agreement. Matter of Lockport & Buffalo R. Co., 77 N. Y. 557. The evidence adduced below sustains the finding of the Special Term. It appears that the plaintiff's president, vice president, and its real estate agent had various conferences with Mr. Ball and made him many different offers for the property, all of which were refused. The vice president offered to pay him the highest price that had been paid by the railroad company to the owners of adjoining land. It seems quite evident that Mr. Ball did not desire to sell, but wished to hold the property for residential purposes, and was averse to the proposed proximity of a railroad to the dwelling house on his wife's land.

[2] It is now claimed on his behalf that these negotiations do not evidence a failure to agree on a purchase price because the plaintiff's officials did not have power to bind the plaintiff without a specific authorization from its board of directors. That claim is untenable. The by-laws of the plaintiff provide that its president "shall have general charge of the business of the company." Such business would seem to include negotiations for the purchase of a right of way and to authorize the president under the circumstances to conduct the negotiations with the defendant John O. Ball. See Matter of N. Y. C. & H. R. R. R. Co., 33 Hun, 274, 277, and Matter of P. P. & C. I. R. Co., 67 N. Y. 377. Be that as it may, however, it appears that no objection to the authority of the plaintiff's officials was made by Mr. Ball during the various negotiations. Under the circumstances, I do not think that a formal, specific resolution of the board of directors was a necessary prerequisite to enable the plaintiff's officials to ascer-

tain the impossibility of agreeing upon a price for the purchase of the land condemned.

[3] For the first time the defendants now raise the objection that one of the commissioners was not a "disinterested" party within the meaning of section 3369 of the Code of Civil Procedure. The basis of the objection appears to be either that such commissioner is an attorney for the New York Central & Hudson River Railroad Company, or that he has tried and argued some cases for that company. It appears that a majority of the plaintiff's stock is owned by the New York, New Haven & Hartford Railroad Company, and it is claimed by the counsel for the defendants that the latter company is "intimate to a degree well known to all" with the New York Central & Hudson River Railroad Company, and that, therefore, an attorney for the latter company is disqualified to act as a commissioner in condemnation proceedings instituted by the plaintiff the New York, Westchester & Boston Railway Company. I do not think that the allegations regarding the commissioner and the relations of these railroads, assuming them to be facts, disqualify the commissioner as matter of law. In Matter of Mayor, etc., 20 Misc. Rep. 520, 46 N. Y. Supp. 640, it was held at Special Term that one at times in the employ of the city of New York was not disqualified to sit as a commissioner in condemnation proceedings instituted by the city. In Terminal Railway of Buffalo v. Gerbereux, 55 Misc. Rep. 1, 104 N. Y. Supp. 737, it was held at Special Term that one who had been employed for a time as a ticket seller by a railroad company to which the plaintiff in condemnation proceedings was a related or subsidiary corporation was not disqualified as matter of law from sitting as a commissioner in such proceedings. In Rochester, S. & E. R. R. Co. v. Tolan, 116 App. Div. 696, 101 N. Y. Supp. 433, the commissioner held disqualified had been engaged by the plaintiff in the condemnation proceedings in the purchase of property for its right of way. No cases, however, appear to have held that a person is disqualified as matter of law from acting as a commissioner in such a proceeding as that at bar because he is an attorney for a railroad company that has business relations with another railroad company that owns the majority of the stock of the condemning company. I have examined the record, and am of opinion that there is no evidence disclosing bias or prejudice as matter of fact upon the part of the commissioner objected to.

[4] No objections were made to the commissioner's qualifications during the trial or upon the motion to confirm the report. The objection is stated for the first time in the briefs filed in this court. Counsel for the defendants claims that he first learned of the alleged disqualification after the record on this appeal had been printed, when he heard the commissioner argue an appeal before this court for the New York Central & Hudson River Railroad Company. It would seem that the professional relations of the commissioner might have been ascertained by due diligence prior to the confirmation of the report by the Special Term. In any event, in the absence of evidence indicative of bias and prejudice as matter of fact, the report should not be disturbed now and the expense of a retrial imposed upon the

parties. The evidence bearing upon the value of the property taken is voluminous and contradictory.

[5] In proceedings such as this, the commissioners are to act upon their own judgment and from information obtained from a view of the property, as well as from the testimony adduced before them. Their award, therefore, is not subject to such a review as obtains upon an appeal in an ordinary action and will not be set aside for inadequacy or excessiveness, unless palpably wrong in either respect. Matter of Daly v. Smith, 18 App. Div. 194, 45 N. Y. Supp. 785; Matter of Brooklyn El. R. R. Co., 87 Hun, 88, 33 N. Y. Supp. 881. The testimony in the record is sufficient to sustain the commissioners' award, and the order affirming the same must be affirmed unless some material error of law has been committed during the trial.

[6] The defendants urge that the plaintiff was bound on the question of value by the prices paid by it through its purchasing company for other land in the neighborhood of the condemned property. Evidence of the prices paid by the plaintiff for such other property is not admissible as proof of the market value of the defendants' property. See Matter of Thompson, 127 N. Y. 463, 28 N. E. 389, 14 L. R. A. 52; Matter of Manhattan Ry. Co. v. Stuyvesant, 126 App. Div. 848, 111 N. Y. Supp. 222; Lewis on Eminent Domain, § 667. Langdon v. Mayor, etc., 59 Hun, 434, 13 N. Y. Supp. 864, affirmed, 133 N. Y. 628, 31 N. E. 98, cited by the defendants, presents a situation unusual and not analogous to the case at bar. That was an action to recover damages sustained by the plaintiff by reason of the erection of a new wharf or bulkhead in front of the plaintiff's wharf on the Hudson river in pursuance of a plan of the city of New York for a new front along the river, whereby access by vessels to plaintiff's wharf was cut off. The court allowed evidence of prices paid by the city in carrying out its plan for other property of the same general character and similarly situated on the river front. Such evidence was allowed, however, as an exception to the general rule, in view of the peculiar situation presented, as the plaintiff's property consisted of only certain valuable incorporeal rights and easements, the market for the sale of which had practically ceased, owing to the adoption of the city's plan. Therefore, in that case, the price paid by the city for similar property was the only available evidence of value.

[7] It appears, however, in the case at bar that evidence of the prices paid by the plaintiff for property in the neighborhood of the defendants' land has been received. The defendants, therefore, have suffered no harm because it is to be presumed that the commissioners considered such evidence in reaching their conclusion regarding the value of the condemned property.

[8] Inasmuch as the evidence of such other sales is not a proper criterion of the value of the defendants' property, the prices paid upon such sales by the plaintiff cannot operate in this proceeding as admissions against its interest, binding upon the commissioners in fixing the compensation. The defendants have obtained more than they were strictly entitled to by having such evidence considered by the commissioners.

The evidence does not sustain the defendants' contention that their property possessed any special or inherent availability for railroad purposes.

[9] In these proceedings the rule is to award full compensation for the property taken, and such compensation is measured by the present market value of the property, and does not include anything for the benefit to the party taking the property as distinguished from the injury to the property owner. Matter of N. Y., L. & W. Ry. Co., 33 Hun, 639; Matter of Daly, 72 App. Div. 394, 76 N. Y. Supp. 28; Matter of East River Gas Co., 119 App. Div. 350, 104 N. Y. Supp. 239; Matter of Simmons, 130 App. Div. 356, 114 N. Y. Supp. 575; Matter of Boston, H. T. & W. R. Co., 22 Hun, 176. The market value has been said to be the price that the property will bring when offered for sale by one desiring, but not obliged, to sell, and bought by one under no necessity of buying. Matter of Simmons, 58 Misc. Rep. 607, 609, 109 N. Y. Supp. 1054.

[10] It is true, however, that in determining such market value the commissioners must consider any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it is taken. Thus in Matter of N. Y., L. & W. R. Co., 27 Hun, 116, the bed of an abandoned canal was held to have intrinsic value for railroad purposes, and in Matter of Gilroy, 85 Hun, 424, 32 N. Y. Supp. 891, it seems to have been held that land under water possessed intrinsic value for reservoir purposes. In the case at bar, however, the evidence does not disclose that the land condemned possessed any intrinsic adaptability for railroad purposes. It appears to be the usual kind of land used for residential purposes. The mere fact that it is within the lines of the proposed railroad location does not enhance its value to the railroad. Were the rule otherwise, such property to be acquired for railroad purposes might be figured as worth what the prospects of a successful road would warrant, since the road could not be constructed without its acquisition. See Matter of Boston, H. T. & W. R. Co., supra, and Black River & M. R. R. Co. v. Barnard, 9 Hun, 104. Assuming, however, that the land had special availability for railroad purposes by virtue of its physical characteristics, it must be remembered that the evidence shows that it is held subject to a covenant restricting its use to residential purposes.

[11] While, of course, such covenant does not preclude the construction of the plaintiff's railroad pursuant to the statutory authority, it is difficult to see how the property could have been marketed by the defendants for railroad purposes, except to a corporation possessing the power of eminent domain or to some person entitled to release the land from the covenant by acquisition of all the property entitled to enforce the same.

I have examined the various exceptions to the admission of evidence, and do not find any necessitating a reversal. The order confirming the report, and the judgment of condemnation, should be affirmed.

Order confirming report of commissioners, and judgment of condemnation, affirmed, with costs. All concur.