In the Matter of the SUPERINTENDENT OF HIGHWAYS OF THE TOWN OF FRANKFORT Relative to Acquiring Lands for Laying Out a HIGHWAY in Such Town, from BLEECKER STREET Easterly to STOP 2 ROAD.

County Court, Herkimer County, November 18, 1948.

*Russell G. Dunmore* for Utica Transit Corporation, respondent.

*Chester J. Winslow* for the Town of Frankfort, petitioner.

PETERSON, J. This is an application under section 179 of the Highway Law to modify or in the alternative to vacate and set aside an award of the condemnation commissioners in this proceeding.

The respondent, Utica Transit Corporation, submits that the award of $3,712.50 made to said corporation is inadequate to compensate respondent for the fair value of said property, and that an improper and unlawful measure of damages was used in appraising this property. The Town of Frankfort submits that the findings of the commissioners should be confirmed.

The property sought to be acquired from the respondent by the Town of Frankfort is a portion of the abandoned roadbed of the former trolley line from Utica to Frankfort and consists of a strip of land 100 feet in width and 5,884 feet in length running easterly from the Masonic Home property to the Frankfort Center Road, its entire course being a little over a mile. In all 13.5 acres are involved.

The abandoned roadbed crosses two creeks which are bridged by existing culverts and has been graded to a practically level surface over its length. The Utica Transit Corporation contends that this stretch of land is in effect a ready-built highway, and claims that the award of the commissioners is based upon an erroneous and improper measure of damages in failing to allow respondent the full highway value, as distinguished from naked land value.

The town on the other hand contends that this property has been abandoned for the past fifteen years; that it was in the

hands of receivers in bankruptcy and a trustee and apparently could not be disposed of; that it is isolated by reason of the fact that lands of the Masonic Home lie between it and Bleecker Street, Utica.

The Town of Frankfort, moreover, claims that it would not have built such a roadbed as that sought to be acquired with a practically level surface for its proposed highway and that it would have constructed a less expensive roadway fitting the contour of the land. Hence it is argued the improvements to the land have no particular value to the Town of Frankfort and it is urged that the maintenance of the present roadbed might, indeed, create expense that need not be incurred with a simpler style of roadway. It strongly contends that the judgment of the commissioners, after visiting and viewing the premises, should be conclusive and not be set aside.

That the original owners of the land in question have spent much money in creating the roadbed is obvious. An engineer testified that the present basic value of the land was $7,625 and the improvements for grading, culverts, etc., were worth an additional $39,207.34.

In any event, the town urges that this court cannot interfere with the findings of the commissioners.

In *Matter of Feeney* (20 Misc. 272) it was held that the court cannot interfere with the findings of the commissioners as to the amount of damages. The court in that case stated that the matter of damages was solely a question for the commissioners to determine.

In *Matter of Village of Middletown* (82 N. Y. 196, 202) the court says this: '' The Constitution provides (art. 1, § 7) that the compensation to be paid when private property is taken for public use shall be ascertained by a jury or by commissioners. To allow the court, on appeal, to increase or diminish the award is to take the question from the constitutional tribunal and so violate the fundamental law.''

The rule that the County Court cannot interfere with the findings as to damages is, therefore, applicable unless the commissioners have committed some error of law. (*Matter of Carpenter*, 11 Misc. 690.) In that case, the court said concerning the commissioners (pp. 692–693): '' They are to be guided by their own judgment, as they view the premises and can better estimate the amount of damage sustained than can a court sitting in review of their action. For the court to arbitrarily set aside their award, unless some error of law is plainly manifest, would be to usurp the functions which the statute confers

upon them, rather than a judicial exercise of its own discretionary power. This is, and long has been, the well-settled rule governing cases of this class.''

As was said in *Matter of New York, West Shore & Buffalo Ry. Co.* (37 Hun 317, 318): " ' Courts will not disturb appraisal of damages for technical errors in the admission or rejection of evidence, unless it is apparent that such errors led to unjust results. The awards will be sustained unless the commissioners have clearly gone astray and disregarded legal principles ' ''.

The matter, therefore, resolves itself into a question of whether or not an error of law was made in the assessment of damages.

It is, of course, the rule as to the amount of compensation to be paid to the owner of property taken by eminent domain that the value to the owner of the property is to be ascertained and not the benefit to be derived by the petitioner. (*Matter of East Riv. Gas Co.,* 119 App. Div. 350.) And that just compensation to an owner whose property has been taken by condemnation for public purposes is to be measured by what the owner lost and not by what the taker has gained. (*Board of Hudson Riv. Regulating Dist.* v. *Cady,* 131 Misc. 768.) And that the test is always the market value of the land when taken and not the value which it might have had under different circumstances. (18 Am. Jur., Eminent Domain, § 348.)

The determination to be made by the commissioners, therefore, was the value of the property to the Utica Transit Corporation on the day it was taken. Have they fairly evaluated these lands in accordance with the established rules?

Section 7 of article I of the New York State Constitution provides that "(a) Private property shall not be taken for public use without just compensation '' and respondents quote *Sparkill Realty Corp.* v. *State of New York* (254 App. Div. 78, affd. 279 N. Y. 656). In defining " just compensation '' that case states it to be (p. 82): " the fair market value of property based on the most advantageous use to which it could be put.''

In these proceedings the rule is further to award full compensation for the property taken and such compensation is measured by the present market value of the property and does not include anything for the benefit of the party taking the property as distinguished from the injury to the property owner. (*Matter of New York, Lackawanna & Western Ry. Co.,* 33 Hun 639; *Matter of Daly,* 72 App. Div. 394; *Matter of New York, Westchester & Boston Ry. Co.,* 151 App. Div. 50.) And the market value has been said to be the price that the property

will bring when offered for sale by one desiring but not obliged to sell; and bought by one under no necessity of buying. (*Matter of Simmons,* 58 Misc. 607, 609; *Matter of New York, Westchester & Boston Ry. Co., supra.*) But in determining such market value the commissioners must consider any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it was taken. (*Matter of New York, Westchester & Boston Ry. Co., supra.*)

" Each case necessarily involves different facts and must be considered by itself." (*Banner Milling Co.* v. *State of New York,* 240 N. Y. 533, 546.)

And the prospective use of the property and its potential value for such use may be considered. (*Balshan* v. *State of New York,* 230 App. Div. 142, affd. 255 N. Y. 596.) Thus in *Langdon* v. *Mayor of City of N. Y.* (133 N. Y. 628, 631) it was said: " ' But it is the potentialities of a given piece of property, both developed and undeveloped, which constitute its chief element of value.' "

And in *Boom Co.* v. *Patterson* (98 U. S. 403, 408) the court said: " So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

In the above-quoted case the property in question consisted of three islands in the Mississippi River adaptable to boom purposes and the court said that this adaptability was a circumstance which the owner had a right to insist upon as an element in estimating the value of his lands. And in the *Matter of Furman St.* (17 Wend. 649, 670) the court said that the property inquiry was " what is the value of the property for the most advantageous uses to which it may be applied "?

And in *Goodwin* v. *Cincinnati & Whitewater Canal Co.* (18 Ohio St. 169) where a railroad company sought to appropriate the bed of a canal for its track, the Supreme Court of Ohio held that the rule of valuation was what the interest of the canal company was worth, not for canal purposes or for any other particular use, but generally for any and all uses for which it might be suitable.

In a case very similar to the instant case, *Matter of New York, Lackawanna & Western Ry. Co.* (27 Hun 116) involving an abandoned canal bed, which had been condemned, the respondent showed that it had constructed and maintained the canal and by reason of excavations, embankments, grades, etc., claimed that the lands were peculiarly available for railroad purposes. It was in that case held proper to show the purpose and use for which the lands were held and for the commissioners to allow the market value of the lands for such purpose and use.

And similarly in *Matter of Gilroy* (85 Hun 424) where property was the object of condemnation proceedings for the purpose of supplying water to the city of New York, the court said that the commissioners must take into consideration the availability of the property for use in connection with the water supply of New York City.

Did the commissioners appointed herein, in determining the fair market value to the owners take into consideration the intrinsic quality of the property taken rendering it peculiarly adaptable for the purpose for which it was taken and did they fairly appraise the property?

On the hearing held by the commissioners witnesses for respondent gave the land alone a value of $7,625, this total being based on unit values varying from $200 to $700 per acre depending upon location. An engineer of the New York State Department of Public Works testified that the property was in effect a ready-built highway already equipped with highway improvements having a present value of $39,207.34 in addition to the basic land value of $7,625. The value of the improvements as appraised by him, summarized briefly, is as follows: grade and fill $19,250, ballast $9,000, stone $3,144, arches and culverts $7,813.34, or a total of $39,207.34. The commissioners were, of course, not obliged to accept this appraisal as the valuation of the lands involved.

Witnesses for the Town of Frankfort testified that the land had a value of $200 per acre, valuing the property on the basic farm-land values, for a total value of $2,700 for the 13.5 acres involved.

The commissioners personally viewed the premises and after due investigation, valued the respondent's property at $3,712.50 for 13.5 acres. This amounts to an appraisal of $275 per acre and obviously does not take into consideration the adaptability of the premises for highway purposes. The award appears to be on the basis of farm-land value, and would seem to be contrary to rule that full compensation for property should be

made on the basis of its adaptability for the purpose to be acquired as stated in the cases hereinbefore referred to, for even abandoned lands are within the scope of the adaptability rule. (*Matter of New York, Lackawanna & Western Ry. Co.,* 27 Hun 116.)

This court is of the opinion that despite their visitation to the premises, the commissioners overlooked the principle of their present adaptability for highway purposes. Due to the sharp conflict in the evidence as to value of premises, it is also the opinion of this court that another hearing should be had for the purpose of admitting further evidence relative to such value. The award is, therefore, vacated and another hearing of the matter ordered before the same commissioners.