FONDA, JOHNSTOWN AND GLOVERSVILLE RAILROAD COMPANY, Appellant-Respondent, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 44354.)

Third Department, February 16, 1968.

*Maider, Smith & Maider* (*Lydon F. Maider* of counsel), for appellant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Jean M. Coon* and *Ruth Kessler Toch* of counsel), for respondent-appellant.

STALEY, JR., J.  These are cross appeals from a judgment in favor of claimant entered September 12, 1966 upon a decision of the Court of Claims in an appropriation case.

The property appropriated was a portion of the former right of way of an electric railway owned by the claimant. The railroad commenced operations in 1902, and discontinued its operations in April, 1938. Thereafter, the tracks, poles and wires were removed and portions of the right of way were conveyed to abutting owners by the claimant.

Pursuant to section 30 of the Highway Law, the State appropriated 23.638 acres of this former right of way for the improvement of Route 5. The appropriations consisted of five parcels; Parcels Nos. 35, 40, 46, 50 and 63. An award was made of $200 for Parcel No. 40 and $500 for Parcel No. 63, and no claim of error is made by the claimant as to these awards, since the parcels had not been improved by the claimant.

The remaining parcels were along the bed of the former railroad. In the process of the original construction, extensive excavations and rock cutting were required on the parcels appropriated. Claimant contends that, in addition to the current market value of the land, it is entitled to the current cost of the excavation which the railroad undertook prior to 1902. Claimant produced as a witness an engineer, who had participated in the preparation of a detailed survey of the entire right of way in the year 1925, and, by use of his original notes, calculated the amount of the rock and earth excavation made on the appropriated parcels, and applied the 1959 cost of such excavation to reach a total of $64,323. Claimant contends it is entitled to be paid this sum, since the State saved this amount by using the former railroad bed in connection with the construction of the improvements on Route 5.

In determining just compensation for land appropriated, the fundamental question is what the owner has lost, not what the taker has gained. (*St. Agnes Cemetery* v. *State of New York,* 3 N Y 2d 37; *Onondaga County Water Auth.* v. *New York Water Serv. Corp.,* 285 App. Div. 655; *Matter of New York, Westchester & Boston Ry. Co.,* 151 App. Div. 50.) The court may consider " any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it was taken." (*Matter of New York, Westchester & Boston Ry. Co.,*

*supra,* p. 56.) Thus, in the *Matter of Port Auth. Trans-Hudson Corp.* (20 N Y 2d 457), it was held that an award of scrap value for tunnel property, which was actually to be used in a public service, could not be said to be fair and just.

It is clear, however, that the claimant is not entitled to recover as an item of damages any money saved by the State in availing itself of the former railroad site. (*Connolly* v. *State of New York,* 197 Misc. 1052; *Matter of Superintendent of Highways of Town of Frankfort,* 193 Misc. 617; *Matter of City of New York [New Gen. Hosp.-Cinelli],* 280 App. Div. 196, affd. 305 N. Y. 835.) The Court of Claims properly rejected the claimant's contention that it was entitled to damages for the cost of excavation of rock and earth for the original construction of the railroad bed.

The claimant's real estate expert assigned a market value of $8,100 for the total area appropriated. He testified that the land was suitable for building lots, and that the area with road frontage was reasonably worth $2 per front foot. For rear acreage he gave a lump value of $200. He testified that he was familiar with sales of building lots in the area. Although the claimant had sold lots from the right of way to abutting owners, not one of these sales was offered as evidence of value. Claimant's expert did not examine the property for the purposes of making an appraisal until December, 1965, and his valuation date was given as 1959–1960. These valuations were based solely on personal opinion of the witness; no factual support was given to establish either the proposed use or values. There is no reference to comparable sales or any other recognized method of appraisal.

Clearly this expert witness testified in a conclusory fashion, relying solely on his background and experience and using none of the customary scientific approaches to valuation. It has been repeatedly held that such opinions are entitled to little or no consideration. (*Katz* v. *State of New York,* 10 A D 2d 164; *Kakulski* v. *State of New York,* 26 A D 2d 958; *Tilo Co.* v. *State of New York,* 25 A D 2d 795; *Fredenburgh* v. *State of New York,* 26 A D 2d 966.)

The State's expert testified that the highest and best use of the property was agricultural and, that based upon alleged comparable sales, its average value was $25 per acre. In his opinion the land was not suitable for building lots. He assigned the sum of $600 as the value of the entire 23.638 acres appropriated. He made no breakdown between tillable lands and pasture and woodlands, although he made such breakdowns with regard to his alleged comparables, and gave no consideration

to the frontage on Route 5, although he admitted on cross-examination that there were several nearby residences on Route 5, and one residence had been recently constructed. The court rejected his testimony on the basis that it gave no assistance whatsoever.

In our opinion the court properly rejected the appraisal of the State's expert. Assuming that the highest and best use of the property was for agricultural purposes, the rule of just compensation would require that the amount of acreage of pasture and woodlands, and the acreage of tillable lands be determined, and the values for each applied to the same, rather than apply an average value per acre. The State's expert had no difficulty in this regard with his alleged comparable sales, yet he made no attempt at such distinctions with regard to the land appropriated.

In view of the failure of either side to present any acceptable evidence of valuation to support an award, the case must be remanded for a new trial.

It is also contended by the State that the trial court erroneously found a *de facto* appropriation on September 3, 1960, and that its award of interest, upon such a finding, was improper. The State claims that the court's finding in this regard is not based upon record proof. The claimant contends that Exhibit 36, an aerial photograph dated September 3, 1960, establishes that the property was occupied by the State as of that date. However, the date, if any, of the alleged *de facto* taking may be established on the new trial.

The judgment should be reversed, on the law and the facts, and a new trial ordered.

GIBSON, P. J., HERLIHY, REYNOLDS and AULISI, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and a new trial ordered.